Commissioners of Public Schools *v.* Stair.

THE COMMISSIONERS OF PUBLIC SCHOOLS OF THE TOWN
OF PHILLIPSBURG

*v.*

JOHN E. STAIR et al.

[Decided October 29th, 1898.   Filed June 10th, 1899.]

1. A building contract required the contractor to furnish formal releases from materialmen and laborers, up to the time of the several payments, who might have a lien thereon, which was pursuant to *P. L. of 1892 ch. 223*, which had been repealed before the contract was entered into.   The contractor, objecting to the procuring of releases at each payment, agreed with the owners to have the payments deposited in the name of one of the owners, and that then the amount be apportioned among the materialmen and laborers according to their respective claims, and if anything was left to be paid directly to the contractor.   This plan was followed up until the last payment, when the claims of the laborers and materialmen exceeded the amount payable; but it was known at the time that the contractor had a claim for extra work not yet finished, and it was supposed that the balance due the former could be paid from such fund.   Before the order to pay for the extra work was drawn the contractor became indebted to defendant for materials, only a part of which were furnished for said building.   Defendant sued out an attachment against the contractor and attached the money for the extra work, which had been deposited in the hands of said owner.—*Held*, that the arrangement in regard to making the payments to the owner was binding on the contractor, and hence also on defendant, so as to impress such payments with a trust in favor of the laborers and materialmen as against the creditors at large of the contractor, notwithstanding there was no statute at the time of the execution of the agreement giving the laborers and materialmen a lien on the premises.

2. The failure of the laborers and materialmen to give the notice required by statute to fix a lien on the money due the contractor, prior to the issuance of the defendant's attachment, does not deprive them of their rights, since they were justified in relying on the former arrangement, and since the nature of the trust was such as to dispense with notice or other legal action on their part under the Lien law.

Bill of interpleader.

The complainants, the commissioners of public schools of the town of Phillipsburg, entered into a contract with one William

28

B. Stevens to erect for them a school building called Sitgreaves School, in the town of Phillipsburg, Warren county. The contract is dated October 30th, 1895, and the contract price was $19,195, to be paid in monthly installments as the work progressed, and provided for the retention of fifteen per cent. until the building was finished. The amount of each monthly payment was to be fixed by a building committee of the complainants instead of the architect.

The contract was duly filed before the work commenced. It was written on a printed blank framed for use under the supplement to the Mechanics' Lien act of March 29th, 1892 (*P. L. of 1892 p. 358 ch. 223*), and contained a clause requiring the contractor to furnish releases from all persons furnishing materials for and labor upon the building up to the time of the payment and who might have a lien thereon.

The act of 1892 had been repealed before the contract was entered into.

The first payment was made directly to the contractor without enforcing the requisitions of the contract in this respect, but at the second payment the contract was enforced, or attempted to be, and the contractor was unable to procure the releases and make the necessary affidavit. He was a resident of Binghamton, New York, unaccustomed to work under the Lien law of New Jersey, without credit in the neighborhood, and objected strenuously to being compelled to procure formal releases at each payment. The commissioners, the complainants, and their counsel, Mr. Reiley, in order to obviate this difficulty, devised the plan of having an order drawn by the treasurer, in favor of the president, Dr. Reese, for each payment, when its amount was fixed, and by him placed to his individual credit in bank, and then that the laborers and materialmen and the contractor should meet in Mr. Reiley's office and the amount be apportioned among the materialmen and laborers according to the amounts of their respective claims as certified to by the contractor, and if anything was left after paying them it should be paid directly to the contractor. This plan was cheerfully acquiesced in by the contractor and followed up for the last

three or four payments, the laborers and materialmen at the same time signing releases for their claims, besides receipting their bills.

The last payment on the contract proper came due on the 1st of November, and a few days after that date all the persons having claims against the contractor on account of work and labor done and materials furnished for the building, with a few exceptions, met at Mr. Reiley's office, and it was found that the aggregate of their claims exceeded the payment by about $700.

Among those claims was a bill in favor of the defendants Middlebrook & Son, materialmen of Binghamton, New York, for a sum—according to Mr. Reiley's recollection—of $391, which was presented by the contractor and certified to as correct after deducting $200 which had been paid by a check of Dr. Reese to Middlebrook & Son on the 11th of September, showing a balance due of $191.   The bill in question was left with Mr. Reiley, but was lost by his messenger on the day of the hearing, and the amount is fixed entirely by his memory.   No payment was made to Middlebrook & Son out of the final payment due to Stevens.   It was, however, known at the time that the contractor had a claim for extra work not yet finished and passed upon by the building committee, and it was supposed that the balance due the materialmen and laborers, or some portion of it, could be paid from that.

The bill for this extra work was reported by the committee, and passed upon by the board on the 3d of December, and fixed at $638.50, and a resolution was passed that an order be drawn by the treasurer in favor of Dr. Reese for that amount.

In the meantime the contractor had become indebted to the defendant John E. Stair, a materialman of Easton, Pennsylvania, in the sum of $528.64, of which only $91.30 was for materials furnished to the school building.   Stair's agent was on the alert and claimed the $91.30, and had some assurance from Mr. Reiley, who managed the whole affair, that it would be paid out of the amount due for extra work.

In the meantime the contractor had left the state, and did not appear further in person in the affair:

On or about the day that the order for $638.50 was placed by Dr. Reese to his credit in bank, Stair sued an attachment out of the circuit court of the county of Warren against Stevens, the contractor, as a non-resident debtor, and garnisheed the complainants by proper proceedings.

On the 14th of December, three days later, the defendant Walters served on the complainants an order in his favor drawn by Stevens, for $26.33, to be paid out of the money in Reese's hands, and it is admitted that that amount of money was due to Walters for labor upon the building.

On the 19th of December Stevens drew a like order in favor of the defendants Middlebrook & Son for $342.37; and on the 19th or 20th of December, Middlebrook & Son served on the complainants a notice under the third section of the Lien act for that amount. It was admitted that that sum was due for materials which went into the building.

The proceedings of Stair in the Warren circuit went to judgment, and he was about to proceed against the complainants as garnishees, when they filed their bill of interpleader in this court, paying the money into court, and bringing in all the parties.

About the time of the filing of the bill the defendant Thomas served on the complainants a notice under the third section of the Mechanics Lien act for the sum of $46.40.

*Mr. John I. B. Reiley,* for the complainants.

*Mr. Bartlett C. Frost,* for John E. Stair.

*Mr. W. H. Walters,* for C. D. Middlebrook & Son.

*Mr. Osiris D. McConnell,* for Henry Thomas.

*Mr. Clarence Walters,* for Henry Walters.

PITNEY, V. C.

The principal contest is between the defendant Stair and the defendants Middlebrook & Son. The contention of Stair is that

the clause in the contract requiring releases and affidavits has
no force or effect, because the statute which gave rise to its neces-
sity was repealed before the contract was made, and that under
the law as it stood at that time there could be no person having
a lien upon the premises; that the arrangement by which the
money was placed in Dr. Reese's hands for distribution among
the creditors who had furnished labor and materials was not at
all binding on Stevens, the contractor, and did not invest Dr.
Reese with any control whatever of the fund, or give him any
right to retain it for the benefit of the unpaid laborers and mate-
rialmen, as against Stevens personally, and that he (Stevens)
could have sued the complainants or Dr. Reese for the money
and compelled its payment, and that neither would have had
any defence either at law or in equity.

The contention of Middlebrook & Son, on the other hand, is
that the clause in the contract is not disposed of by such argu-
ment and cannot be dispensed with, but must be given force,
and that the arrangement which was acquiesced in by the con-
tractor, that the payments as they matured should be placed in
Dr. Reese's hands, and that he should have a right to apply
them to the payment of persons who had done work and fur-
nished materials, was a binding one on Stevens, and was in effect
a payment to Stevens, and furnished the complainants with a
complete equitable, if not legal, defence to any claim by Stevens
or his assignee, voluntary or involuntary, to demand the same
until all such meritorious claims were paid, and that the fund
in Dr. Reese's hands became at once impressed with a trust in
favor of the creditors, and was in effect a payment to them.

I am of the opinion that the contention of the counsel of
Middlebrook & Son is well founded. The whole contract and
the conduct of the parties must be construed in view of the evi-
dent policy of the Mechanics' Lien law, and particularly of that
section which forbids the making of advance payments. It is
clearly the policy of the act that the money due from the owner
to the contractor shall be first applied to the payment of all
claims for labor done on, and materials furnished for, the build-
ing, before the contractor himself or any of his general creditors
shall reach it.

Then, again, it is to be observed that while it is true that, because the contract was duly filed, nobody except the contractor could have any lien upon the building and curtilage upon which it stands, that proposition does not include the contract price in the hands of the owner, and it has been distinctly declared by the court of errors and appeals, in the case of *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 413,* that the laborers and materialmen do have an "inchoate lien" upon the contract price in the hands of the owner, to be wrought out by means of a notice served under the third section.

The argument of the counsel of the attaching creditor eliminates the clause in question entirely from the contract and renders it an absolute nullity. This result should be avoided and the clause given some force if possible. The rules of construction require that. I think this can be done by construing it as, in effect, an undertaking on the part of Stevens that all labor and material going into the building should be paid out of the contract price. Such a stipulation the complainants, in my judgment, had a right to exact. The matter of sentiment, if you choose to call it that, is to be considered. The commissioners might well desire that nobody who worked on or furnished materials to this building should be able to say that they had not received their pay, and a contract to that effect should be enforced. This is the construction which the parties put upon the clause in question, and they enforced it by a substituted proceeding, to which the contractor did not seriously object, but in which he cheerfully acquiesced, namely, the placing of the payments as they matured on the contract in the hands of their president as an individual, to be by him applied to the payment of the claims in question. This acquiescence by the contractor seems to me to raise an equity in favor of all the laborers and materialmen as against the creditors at large of the contractor. The fund in his hands became impressed with a trust in favor of the favored class of creditors, and that trust enables the complainants to defend in equity against a simple action at law by the contractor, except as to such sum of money as may remain after paying all the class of creditors just mentioned, and that

defence of course extends to the plaintiff in attachment, who is nothing more than an involuntary assignee of the contractor.

It is to be observed that each one of these parties who claim against Stair might have given his claim, legal as well as equitable, preference by giving the requisite notice under the third section prior to the issuing of his attachment, and it was urged that they lost their right, as against the general creditors, by failing to give such notice. But I think this argument cannot prevail for two reasons. In the first place, the arrangement which I have stated, and which was carried out for the last three regular payments under the contract, presumably was made known to most of them, and they were measurably justified in supposing, and acting upon the supposition, that no notices were required or any other legal steps taken in order to insure them their payment. They had a right to rely upon the money being impounded in Dr. Reese's hands for their benefit. And in the second place, the nature of the trust was such as to dispense with any notice or other legal action on their part under the Lien law and placed all on an equal footing in the matter of distribution.

The result is that the claim of Stair must be reduced to $91.30, with his costs in this court. The claim of Walters is allowed, with his costs in this court. The claim of Middlebrook & Son must be reduced from $342.37 by a credit of $23.42, making it $318.95 (besides costs), for the reason that it appears by their bill of items furnished that they credited Stevens on September 12th with $176.58 only, when they were actually paid $200. No reason is given for not giving the full credit. The total amount of the bill—$518.95—does not agree with the recollection of Mr. Reiley of the amount of the bill furnished him by Mr. Stevens; but that is easily accounted for by the fair inference to be drawn from the dates of the items that the bill produced by Stevens was partial, and that other items were subsequently furnished which appear in the bill exhibited, which is admitted to be correct. The claim of Thomas, amounting to $46.40, with costs, if any, is also allowed.

In my opinion, for the reasons before stated, there should be

no preference among these creditors, but all should stand on an equal footing. If the fund in court is insufficient to pay all, then they will be paid *pro rata* upon the amount of their several claims, with costs. If the fund is more than sufficient to pay them all, then the remainder will go to the defendant Stair.